IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

GEORGE PRIVACY, )
          Plaintiff, )
)
v. ) No. 03-1122-CV-W-FJG
)
YELLOW TRANSPORTATION, INC., )
          Defendant. )

# ORDER

Pending before the Court is Defendant's Motion for Summary Judgment (Doc. No. 37). Plaintiff, a Caucasian male over the age of 40, brings claims of reverse race discrimination and age discrimination in this employment lawsuit. Defendant argues that (1) plaintiff's claims lack foundation in law or fact, and thereby fail to establish a prima facia claim of discrimination; and (2) defendant has legitimate non-discriminatory reasons for its actions, and therefore plaintiff cannot demonstrate pretext. Defendant's arguments will be examined below.

**I.    Facts**[1]

Yellow Transportation, Inc., now Yellow Roadway, Inc., ("Yellow") is a transportation

---

[1]The Court notes that, while plaintiff provided his own set of "uncontroverted facts," plaintiff did not specifically controvert <u>any</u> of defendant's statement of facts. Pursuant to Local Rule 56.1, all facts set forth in the statement of defendant shall be deemed admitted. Further, the Court notes that plaintiff's "uncontroverted facts" by and large support defendant's recitation of the facts in this case. Where differences occur and the evidence proffered by plaintiff supports plaintiff's assertions, the Court has included plaintiff's version of the events.

1

company, serving primarily as a carrier of general commodities by truck. Yellow at the relevant time had over 25,000 employees and operated approximately 295 terminals throughout the United States and Canada. Plaintiff Price was a mechanic employed by Yellow at Yellow's Kansas City, Missouri, terminal. Plaintiff is a Caucasian male. The mechanics at Yellow's Kansas City Terminal are unionized and are represented by Local 778 of the International Association of Machinists and Aerospace Workers.

The terms and conditions of mechanics' employment at the Kansas City Terminal are governed by a collective bargaining agreement between Yellow and Local 778. Article IX of the collective bargaining agreement provides for a Grievance Procedure. That procedure provides:

> **Section 1.** All complaints and/or grievances shall be disposed of between the Employer and the Local Union, or an employee of the Employer, within five (5) working days after the complaint first arises. If not so disposed of, the complaint shall be reduced to writing and presented to the Employer within three (3) days thereafter and shall be processed in accordance with the procedure set forth in this Article. If not so reduced to writing and presented to the Employer within the time period prescribed herein, it shall be considered as dropped.
>
> Subsection (d) of Section 1 provides that: "All decisions of the . . . Area Grievance Committee set forth in this subparagraph (d) shall be final and binding upon the Employer, the Union and the employees."

Article V, Section 2 of the collective bargaining agreement provides that discrimination with respect to conditions of employment is not tolerated. Exhibit 14 attached to defendant's suggestions in support of its motion for summary judgment (Doc. No. 39) is a copy of plaintiff's job description as a mechanic. Paragraph 11 of the

2

mechanic's job description lists welding as an essential duty of the job.[2]

Yellow has adopted policies requiring respect in the workplace and prohibits discrimination and harassment, which policies are distributed and made available to its employees. Exhibits 12 and 13 to defendant's suggestions in support of its motion for summary judgment (Doc. No. 39) are examples of these policies, and plaintiff was aware of these policies.

Sometime prior to May 23, 2002, Fredrick Brownlee, a Teamster at Yellow and an African-American male, gave plaintiff a personal lawnmower part and asked plaintiff to fix it. Plaintiff and Brownlee have been "real good friends for 25 years . . . he's my brother." (Plaintiff's deposition, p. 10, ll. 19-22). Brownlee did not know where or when plaintiff was going to repair the personal lawnmower part, or how plaintiff planned to fix it.

On May 23, 2002, plaintiff was working on the personal lawnmower part at Yellow's terminal during his regular work shift.[3] When asked by a co-worker what he was doing, plaintiff replied, "I guess we'll just have to 'nigger rig' it like it was before." Plaintiff's comment he was going to "nigger rig" the personal lawnmower part was overheard by

---

[2]Whether plaintiff is able to weld is relevant in that part of the outside work that was completed on company time involved welding. Plaintiff attempts to minimize his welding ability in his statement of facts by providing a citation to the deposition testimony of Fredrick Brownlee, who states that he never saw plaintiff do any welding. This statement, alone, does not particularly help plaintiff's case because it does not provide the Court with information as to whether plaintiff is able to weld. In presenting this statement as evidence, plaintiff is asking the Court to draw an unsupported, illogical inference (i.e., that because Mr. Brownlee never saw plaintiff do any welding, plaintiff must not be able to weld). The Court declines to draw such an inference.

[3]Plaintiff claims that the work he did involved removing four bolts from the lawnmower's transmission. Plaintiff claims that Darrell Morgan and Dan Minnick (other mechanics of defendant) welded the shaft of the lawnmower part. Morgan and Minnick denied performing the work on company time, and neither of them were punished.

3

several employees, including Arthur Williams, an African-American. When Williams asked plaintiff not to use that term, plaintiff replied by asking whether Williams would be more comfortable with the term "Afro-engineering."[4]

Plaintiff testified that he did not think the term "nigger rig" was a racial slur, but that it was a racial epithet. Williams was upset by plaintiff's comments, and reported the incident to his supervisor, Kevin Anderson (Manager, Equipment Services), and completed a formal Incident Report.

Anderson, upon receiving Williams' report, immediately contacted Jerome Wilson with Yellow's Human Resources Department at Yellow's headquarters in Overland Park, Kansas, and Anderson's superior, Dan Pabst. Wilson, an African-American, came to Yellow's Terminal the following morning, and, with Anderson and in the presence of a union representative investigated the charges made by Williams by interviewing Williams and the persons he listed as witnesses. Wilson and Anderson interviewed Darrell Morgan, Darrell Palmer and Dan Minnick, all Caucasian mechanics at Yellow. Each of them substantiated the facts contained in Williams' complaint, including that plaintiff had used the epithet "nigger rig" and worked on the personal lawnmower part.

Wilson and Anderson interviewed plaintiff after interviewing Williams, Morgan, Palmer, and Minnick. Plaintiff admitted bringing in and working on the personal lawnmower part belonging to Brownlee,[5] admitted using the term "nigger rig" and acknowledged making

---

[4]Plaintiff states that he took Williams' comments in a joking way because they had barbecued together and had been social friends for 25 years.

[5]Plaintiff states in his statement of facts that at this meeting he denied working on the lawnmower part. However, defendant notes in its reply that plaintiff testified that he performed some work on the part during work hours, and plaintiff's own uncontroverted

4

the "Afro-engineer" reply to Williams. Anderson determined that the only employee that worked on the lawnmower part was plaintiff.

Plaintiff sought to excuse his conduct by stating that another employee, Brownlee, had also used the "nigger rig" term. When Brownlee was interviewed by Wilson and Anderson, Brownlee admitted using the term "nigger rig", but said he did so in a private conversation with plaintiff later that morning when plaintiff showed Brownlee the newly repaired personal lawnmower part, and he did not think anyone else heard the remark. The conversation between plaintiff and Brownlee occurred when they were standing side by side, in a normal conversational tone.[6] Brownlee was not present when plaintiff made the earlier statement in front of several employees that he was going to "nigger rig" the personal lawnmower part. Brownlee also told Wilson and Anderson that he had asked plaintiff to fix a part from his personal lawnmower, but did not know when or how plaintiff would fix it.

After completing the interviews, Wilson and Anderson consulted with John Graves, Manager, Labor Relations, at the Kansas City Terminal. After seeing the results of the investigation, Graves determined that plaintiff should be terminated for two reasons: (1) working on non-company property on company time with company equipment; and (2) using the racial epithet that was the subject of Williams' complaint. At the direction of Graves, Anderson signed two separate termination letters (one for each of the reasons),

---

facts establish that (at the very least) plaintiff removed four bolts from the lawnmower part and prepared that part for other employees to weld.

[6]Plaintiff claims that "anybody" would have heard Brownlee make this comment because Brownlee is "loud." However, plaintiff sets forth no evidence that anyone else heard Brownlee.

5

handed them to plaintiff at the end of his shift, and mailed copies by certified mail.

On May 28, 2002, plaintiff filed a Grievance Report, contesting each of his two discharge letters. On June 19, 2002, plaintiff's grievance was heard by a Joint Panel Arbitration Committee of the Area Grievance Committee, pursuant to the grievance/arbitration procedure between Yellow and Local 778. The arbitration Panel agreed with the reasons for the discharge, but reduced the discharge to a six-month suspension without pay. The grievance hearing lasted an hour and a half or two hours.

Plaintiff, at the time of his discharge, was subject to a written warning[7] which put him on notice that any further misconduct could result in him losing his job. (See Ex. 10 to Doc. No. 39, which is a letter dated December 18, 2001, stating, "Any recurrence of this or similar type acts will result in further disciplinary action up to and including discharge.")

Plaintiff believes Anderson has been out to get him for years and believes it is because he is Caucasian, since Brownlee also used the "nigger rig" epithet but was not discharged.

No other employee heard Brownlee say "nigger rig" to plaintiff, and no one made a complaint about Brownlee using the term. Furthermore, plaintiff is unaware of anyone who complained of Brownlee's comment or even overheard it. After the comment was brought to defendant's attention, Brownlee was issued a Letter of Information from defendant on May 19, 2002, as a result of his using the term "nigger rig." When interviewed by Wilson

---

[7]It is unclear from the facts set forth by the parties what the effect of this warning letter was at the time of plaintiff's discharge. Plaintiff states that the letter was "effective" for 90 days after December 18, 2001, and defendant does not controvert that statement. However, neither party explains what "effective" means in the context of this case.

6

and Anderson, plaintiff admitted using the term "nigger rig" and admitted that when Williams complained, plaintiff made the "Afro-engineering" reply.[8]  Plaintiff agrees the "nigger rig" comment violated federal law and Yellow's policy.  In the interview between Wilson, Anderson and plaintiff, plaintiff admitted he brought in a part from Brownlee's personal lawnmower to fix for Brownlee.  Brownlee was not accused of working on a personal lawnmower part on company time, nor did he know where or when plaintiff intended to work on Brownlee's personal lawnmower part.  Plaintiff admits the reasons for his discharge as set forth in the termination letters are true.[9]

Plaintiff's present age discrimination claim is that two Caucasian mechanics who he says worked on the personal lawnmower part were not treated the same as him.  However, plaintiff's only claim before the EEOC was that he was treated differently than Brownlee.  The two mechanics plaintiff claims were treated differently and now form the basis for his

---

[8]In an apparent response to this statement, plaintiff in his statement of facts attempts to set forth the EEOC's probable cause finding from its investigation (finding probable cause to believe that plaintiff had been discriminated against on the basis of his race).  However, defendant states that the EEOC findings have no bearing on the issues in this case and would be inadmissible at trial.  The Court notes that "the admission of administrative findings, such as an EEOC reasonable cause determination, is to be left to the sound discretion of the trial court."  Johnson v. Yellow Freight System, Inc., 734 F.2d 1304, 1311 (8th Cir. 1984).  In this instance, the EEOC findings are very brief and do not discuss many of the issues relevant to the Court's factual inquiry; for instance, the EEOC did not perform an analysis as to whether plaintiff was truly similarly situated to Mr. Brownlee.  The Court finds that the EEOC's findings are conclusory, and that evidence has been presented by both parties as to the matters summarized in the report; therefore, the report has little probative value compared to its prejudicial effect.  See Johnson, 734 F.3d at 1311.  The Court agrees, therefore, that the information contained in the report would be inadmissible at trial, and does not constitute evidence sufficient to overcome defendant's motion for summary judgment.

[9]Plaintiff states in his statement of facts that he denies the reasons for his discharge are true; however, the Court agrees with defendant that plaintiff has admitted in his deposition testimony that those reasons are true.

claim of age discrimination are Darryl Palmer and Dan Minnick. Darryl Palmer was 57 or 58 (about ten years older than plaintiff) at the time of plaintiff's discharge. Dan Minnick is the same age as plaintiff or close to it. Plaintiff can identify no employees older than him who were harassed in the same way he claims to have been harassed.

There was no other Yellow employee at the times here mentioned who used a racial slur and was working on a piece of non-Yellow equipment on Yellow's time. Plaintiff admits he was guilty of two offenses, making the racial slur and working on non-Yellow equipment on Yellow's time when he was being paid by Yellow.

Plaintiff's Charge of Discrimination to the EEOC does not mention age discrimination in the narrative particulars of his charge, although the Age box was checked by hand because plaintiff's attorney told him to check it because plaintiff was over 40. The only similarly situated person to whom plaintiff refers in the Charge of Discrimination is a "Black employee," Fred Brownlee.[10] In the EEOC intake questionnaire there is no mention of age discrimination.

## II. Standard

Summary judgment is appropriate if the movant demonstrates that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986). The facts and inferences are viewed in the light most favorable to the nonmoving party. Fed. R. Civ. P. 56(c); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-590 (1986). The

---

[10] Plaintiff claims he also referred to Dan Minnick and Darryl Palmer in the Charge of Discrimination. However, as defendant points out, plaintiff's exhibit clearly establishes that the only claims presented in the Charge of Discrimination were based on race and color.

8

moving party must carry the burden of establishing both the absence of a genuine issue of material fact and that such party is entitled to judgment as a matter of law. Matsushita, 475 U.S. at 586-90.

Once the moving party has met this burden, the nonmoving party may not rest on the allegations in the pleadings, but by affidavit or other evidence, must set forth facts showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e); Lower Brule Sioux Tribe v. South Dakota, 104 F.3d 1017, 1021 (8th Cir. 1997). To determine whether the disputed facts are material, courts analyze the evidence in the context of the legal issues involved. Lower Brule, 104 F.3d at 1021. Thus, the mere existence of factual disputes between the parties is insufficient to avoid summary judgment. Id. Rather, "the disputes must be outcome determinative under prevailing law." Id. (citations omitted).

Furthermore, to establish that a factual dispute is genuine and sufficient to warrant trial, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the facts." Matsushita, 475 U.S. at 586. Demanding more than a metaphysical doubt respects the appropriate role of the summary judgment procedure: "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action." Celotex, 477 U.S. at 327.

**III.   Analysis**

    A.   Reverse Race Discrimination Claim

Defendant notes that plaintiff was a white male, already on written notice that any further misconduct could result in discharge, who was discharged for using racial epithets

9

in the workplace and for using company property to fix personal property on company time. Defendant states that, although plaintiff admits both the comments and the conduct, plaintiff alleges that defendant would not have terminated his employment if he were African-American or under forty. Defendant argues that plaintiff's discharge had nothing to do with his race or age.

Because plaintiff has put forth no direct evidence of reverse race discrimination, the Court will analyze plaintiff's claims under the burden-shifting analysis of McDonnell Douglas v. Green, 411 U.S. 792, 801-04 (1973).[11] First, plaintiff must first establish a prima facie case of discrimination to establish a claim under Title VII. Ross v. Kansas City Power & Light Co., 293 F.3d 1041, 1046 (8th Cir.2002). Once the plaintiff has established a prima facie case, the burden of production shifts to the employer to articulate a legitimate, nondiscriminatory reason for its actions. Id. If the employer satisfies this burden, the burden of production shifts back to the plaintiff to demonstrate that the employer's proffered reason is pretext for unlawful discrimination. Id. To establish that an employer's legitimate, nondiscriminatory reason is pretext for discrimination, an employee must offer evidence by which a reasonable trier of fact could infer discrimination. Mathews v. Trilogy Communications, Inc., 143 F.3d 1160, 1165 (8th Cir.1998).

With respect to plaintiff's race discrimination claim, to make a prima facie case, plaintiff must establish: (1) membership in a protected class; (2) that he was meeting the reasonable expectations of his employer; (3) adverse employment action; and (4) circumstances which create an inference of unlawful discrimination, such as similarly

---

[11]The McDonnell Douglas framework will also be used to analyze plaintiff's race discrimination claims.

10

situated person not of the protected group being treated differently. Jacob-Mua v. Veneman, 289 F.3d 517, 521-22 (8th Cir. 2002); Putnam v. Unity Health Sys., 348 F.3d 732, 736 (8th Cir. 2003); Williams v. Ford Motor Co., 14 F.3d 1305, 1308 (8th Cir. 1994). As this case also involves reverse discrimination, plaintiff also must show evidence of "background circumstances supporting the suspicion that the defendant is that unusual employer who discriminates against the majority." Woods v. Perry, 375 F.3d 671, 674 (8th Cir. 2004)(quoting Duffy v. Wolle, 123 F.3d 1026, 1036 (8th Cir. 1997)).

Defendant argues that plaintiff does not meet three of these essential elements. First, defendant argues that plaintiff did not meet the reasonable expectations of his employer because plaintiff knew his inappropriate comments violated federal law and defendant's policies, and that plaintiff's inappropriate comments and improper conduct thereby prevented him from meeting defendant's legitimate conduct expectations. See Miner v. Bi-State Dev. Agency, 943 F.2d 912, 913-14 (8th Cir. 1991)(affirming entry of summary judgment where employee's insubordination evidenced a failure to meet employer's legitimate job expectations).[12]

Second, defendant argues that plaintiff cannot demonstrate that a similarly situated employee was treated differently. The test for whether employees are similarly situated is "rigorous," Harvey v. Anheuser-Busch, Inc., 38 F.3d 968, 972 (8th Cir. 1994), and requires the comparable individuals be "similarly situated in all relevant respects." Cronquist v. City of Minneapolis, 237 F.3d 920, 928 (8th Cir. 2001); Forrest v. Kraft Foods, Inc., 285 F.3d 688, 692 (8th Cir. 2002)(quoting Britton v. City of Poplar Bluff, 244 F.3d 994, 998 (8th Cir.

---

[12]Plaintiff does not respond to defendant's argument as to this point.

11

2001)). Here, defendant argues that plaintiff was under a written warning and understood that further violations of defendant's policies could result in immediate discharge, and plaintiff can identify no employee subject to a written warning that was not discharged for using inappropriate racial language at work or for working on personal property during work hours.

Plaintiff responds in his opposition that he can establish that similarly situated employees outside his race were treated more favorably. Plaintiff's entire analysis is as follows: (1) plaintiff and Brownlee are members of separate protective classes of individuals; (2) defendant took an adverse action against plaintiff (plaintiff was terminated and Brownlee was not); and (3) in the taking of the action, defendant treated a similarly situated employee outside of plaintiff's group more favorably than he.

As noted by defendant in its reply, this response utterly fails to provide any analysis as to why plaintiff and Brownlee are similarly situated. Defendant notes that Brownlee's use of the term "nigger-rig" was heard only by plaintiff in a private conversation, whereas plaintiff used the term in front of a different African-American co-worker, and when that co-worker objected, plaintiff responded with a wisecrack. Additionally, defendant notes that Brownlee worked in a different department for a different supervisor, was not on written warning at the time of the remark, and did not know that plaintiff would be working on the lawnmower part at defendant's place of business. When different decision-makers are involved in making employment decisions, the decisions "are rarely 'similarly situated in all relevant respects.'" Forrest v. Kraft Foods, Inc., 285 F.3d 688, 692 (8th Cir. 2002) (quoting Britton, 244 F.3d at 998; Harvey, 38 F.3d at 972). Additionally, where employees are found to have different disciplinary histories (such as the case here, where Brownlee was not

12

Case 4:03-cv-01122-FJG   Document 69   Filed 04/22/05   Page 12 of 15

subject to a written warning prior to making the racial comment, whereas plaintiff was subject to such a warning), the employees will not be considered similarly situated in all relevant respects.  See Forrest, 283 F.3d at 691.

Defendants finally argue that plaintiff has failed to show background circumstances that support the suspicion that defendant discriminates against the majority.  If the employee fails to make this showing, he may only proceed with a reverse discrimination claim if there is direct evidence of discrimination.  Gagnon v. Spring Corp., 284 F.3d 839 (8th Cir. 2002).  Here, plaintiff has provided no such evidence in his response to defendant's motion for summary judgment.

The Court agrees with defendant that plaintiff has failed to demonstrate a prima facie case of discrimination by failing to demonstrate a question of material fact exists as to (1) whether plaintiff met the reasonable expectations of his employer; (2) whether plaintiff was similarly situated in all relevant respects to employee Brownlee; and (3) whether background circumstances exist indicating that defendant is the unusual employer that discriminates against the majority.  Therefore, defendant's motion for summary judgment as to plaintiff's race discrimination claim is **GRANTED.**[13]

    B.    Age Discrimination Claim

---

[13]The Court also wishes to note that plaintiff's race discrimination claim also fails because defendant has set forth a legitimate non-discriminatory reason for the discharge (violation of work rules), and plaintiff admits to the conduct that violated work rules.  Further, once defendant meets its burden of production with respect to a legitimate non-discriminatory reason for the employment action, plaintiff must come forth with some evidence of pretext in order to survive a motion for summary judgment.  Plaintiff has set forth no evidence that would support an assertion that defendant's rationale for discharging plaintiff was pretextual.

13

Defendant first argues that plaintiff has failed to exhaust his administrative remedies. Exhaustion of administrative remedies "requires a claimant to give notice of all claims of discrimination in the administrative complaint." Stuart v. General Motors Corp, 217 F.3d 621 (8th Cir. 2000). Any subsequent lawsuit is limited to allegations raised in or "reasonably related" to those made in the administrative complaint. Faibisch v. University of Minn., 304 F.3d 797, 803 (8th Cir. 2002).

Here, plaintiff did not describe his age discrimination claim in his EEOC questionnaire, or during his EEOC interview. Plaintiff states that he checked the age box on his charge of discrimination only because an attorney in San Antonio told him to check the box since he was over forty. The EEOC investigator advised plaintiff he would "serve the charge on [defendant] and if there was a question regarding the age box being checked, I would tell [defendant] to disregard it as age is not a factor. [Plaintiff] understood and we concluded the conversation." No further administrative action was taken on the age discrimination claims.

Plaintiff does not directly respond to this argument. The Court finds that plaintiff has not exhausted his administrative remedies, and that summary judgment as to the age discrimination claim should be **GRANTED.**

The Court also wishes to note that plaintiff has failed to demonstrate a prima facie case of age discrimination. To establish a prima facie case of age discrimination, plaintiff must prove (1) he was at least 40 years old; (2) he was meeting defendant's legitimate job expectations; (3) he was discharged; and (4) he was treated differently than employees that were significantly younger. See O'Connor v. Consolidated Coin Caterers Corp., 517 U.S. 308, 313 (1996); Erickson v. Farmland Indus., 271 F.3d 718, 725-26 (8th Cir. 2001). As

14

discussed above, plaintiff cannot demonstrate he was meeting defendant's legitimate job expectations. Additionally, plaintiff has utterly failed to provide evidence he was treated differently than employees that were significantly younger. The employees that plaintiff alleges were treated differently based on their age were Darryl Palmer and Dan Minnick; however, the facts demonstrate that both these individuals are either plaintiff's age or older.

Therefore, for the foregoing reasons:

(1) Defendants' Motion for Summary Judgment (Doc. No. 37) is **GRANTED IN FULL**;

(2) Pursuant to the Court's February 24, 2005 Order (Doc. No. 44), the Court has determined that sanctions against plaintiff are not warranted in this matter; and

(3) All remaining motions in this case are **DENIED AS MOOT.**


**IT IS SO ORDERED.**

                                                **/S/FERNANDO J. GAITAN, JR.**
                                                Fernando J. Gaitan, Jr.
                                                United States District Judge

Dated: April 22, 2005
Kansas City, Missouri